CORLEY v. TRAVELERS' PROTECTIVE ASS'N.

(Circuit Court of Appeals, Sixth Circuit. December 10, 1900.)

No. 805.

1. ACCIDENT INSURANCE—LAW GOVERNING CONTRACT—PLACE OF EXECUTION.

Ky. St. § 679, relating to life insurance, provides that "all policies or certificates hereafter issued to persons within the commonwealth by corporations transacting business therein under this law" which contain any reference to the application or constitution or by-laws of the corporation as part of the contract shall have attached a copy of such application or the provisions of the constitution or by-laws referred to, otherwise such provisions shall not be received in evidence or be considered as a part of the contract. An accident insurance association. having its national headquarters in another state, was composed of divisions and local posts; and one of such divisions, having subordinate posts, was located in Kentucky. Benefits were paid through the posts, which also received applications for membership and dues, and forwarded them to the division, which passed upon the eligibility of the applicant, subject to approval by the national office. Certificates were issued by the national secretary and sent to the division, through which they were received, by the members. *Held,* that such association was transacting business in the state of Kentucky, within the meaning of the statute, and a certificate so issued and delivered therein to a person residing in the state was subject to its provisions.

2. SAME—FOREIGN COMPANIES—DOING BUSINESS IN STATE.

Where an insurance association in fact does business in a state by soliciting members and issuing policies therein, its contracts so made are governed by the laws of the state, regardless of whether or not it applied for the privilege of doing business therein as required by the statute.

3. SAME—CHARACTER OF COMPANY—FRATERNAL OR ASSESSMENT COMPANIES.

An association having a membership of traveling men issued certificates to its members which entitled them to benefits in case of death or injury from accident; the same being paid from a fund created primarily by the membership fees and annual dues, but for which assessments were to be made if required. There was a central or national organization, with state divisions and local posts, although members were received through the divisions where there was no post. The benefit or indemnity feature seemed to be the principal purpose of the association, and the annual dues were divided between the post, if any, the division, the central association, and the indemnity fund. *Held,* that such association was not a secret or fraternal organization under the supervision of a grand or supreme body, and whose members were received "through the lodge system exclusively," within the meaning of Ky. St. § 641, but was an insurance organization on the co-operative or assessment plan, as defined in sections 664, 665, and subject to the provisions applicable to such associations.

4. SAME—KENTUCKY STATUTE—SPECIAL LIMITATION OF ACTION.

Under the provision of Ky. St. § 679, requiring all policies or certificates issued to persons within the state by any corporation transacting business therein to have attached thereto a copy of any provision of the constitution or by-laws of the corporation referred to therein, or which is made a part of the contract, where such a corporation issued a certificate to a member which entitled him "to all the benefits accruing from such membership under the provisions of the constitution and by-laws of their association, * * * which are made a part of this certificate," the benefits in case of the death of the member to be paid to a beneficiary named, but no copy of any part of the constitution or by-laws was attached, the association cannot plead in bar of an action by the beneficiary after the death of the member a special limitation of six months contained in the constitution, but which was not shown by the certificate.

**5. SAME—EFFECT OF FAILURE TO COMPLY WITH STATUTE.**

In such case, however, the constitution may be looked to for the purpose of ascertaining the amount of the benefits recoverable, since the provision fixing such amount adds no new element to the contract, and the association will not be permitted to avoid the contract by its own wrong, in failing to comply with the statute.

**6. SAME—DEATH FROM ACCIDENT—KILLING BY INSANE PERSON.**

A provision of a policy insuring against death by accident, exempting the company from liability for death from "intentional" injury inflicted by the insured or any other person, does not preclude a recovery where the insured was killed by an insane person, incapable of forming a rational intent.

In Error to the Circuit Court of the United States for the District of Kentucky.

This action was brought to recover upon a certain certificate of membership issued by the Travelers' Protective Association of America, a corporation of the state of Missouri. The certificate was issued to J. W. Corley, dated October 8, 1894. Corley was shot and killed on June 24, 1897. Proofs of death were furnished in July, and in August of the same year the defendant company declined to pay the claim. This action was brought in the circuit court on the 10th day of June, 1898. The certificate is as follows:

"By this certificate of membership certifies that J. W. Corley, of Louisville, Ky., is a member of the Travelers' Protective Association of America, and is entitled to all the benefits accruing from such membership, under the provisions of the constitution and by-laws of this association, subject to the conditions printed on the back hereof, and the application for membership, all of which are made a part of this certificate. Benefits, in case of death, payable to Miss Sallie H. Corley, his adopted daughter. In witness whereof, this association has caused this certificate to be signed by its president and secretary, under the seal of the association, at St. Louis, Mo., this eighth day of October, A. D. 1894."

Rules.

"The member hereby agrees that the following rules shall be observed: That the Travelers' Protective Association of America shall not be liable for injuries incurred by a member in occupations more hazardous than specified in his application for membership; or in case of injuries, fatal or otherwise, wantonly or intentionally inflicted upon himself while sane or insane; or in case of disappearance, or injuries of which there is no visible mark upon the body (the body itself not being deemed such a mark in case of death); or in case of injury, disability, or death happening to the member while intoxicated, or in consequence of his having been under the influence of any narcotic or intoxicant; or death or disability when caused wholly or in part by any bodily or mental infirmity or disease, dueling, fighting, wrestling, war, or riot; injury resulting from an altercation or quarrel, unnecessary lifting, voluntary overexertion (unless in a humane effort to save human life), voluntary or unnecessary exposure to danger or to obvious risk of danger, or by intentional injuries inflicted by the member or any other person; injury received while avoiding or resisting arrest, while violating the law or violating the ordinary rules of safety of transportation companies, or riding on a locomotive; or to cases of injury caused by the disease of epilepsy, paralysis, apoplexy, sunstroke, freezing, orchitis, hernia, fits, lumbago, vertigo, or by sleepwalking, voluntary inhalation of any gas or vapor; injury, fatal or otherwise, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled; disease, death, or disability resulting from surgical treatment (operation made necessary by the particular injury for which claim is made, and occurring within three calendar months from the date of accident excepted). Any advisory surgeon, physician, or other authorized representative of this association shall be allowed to examine the person or body of an injured member as often as may be necessary, in regard to any alleged injury or cause of death, and a refusal to allow such examination shall forfeit any and all claims under this

certificate. Beneficiaries can be changed only on application to the secre- tary at St. Louis. Any member meeting with an accident must notify the state secretary of the division of which he is a member, and the national secretary, immediately, of said accident, giving full particulars of same, and name of attending physician. In case of failure to so notify, except because of unconsciousness or physical inability, the member shall forfeit all right to insurance benefits."

The application for membership is in the form following:

"Any white male person of good moral character, not under the age of eighteen years or over 60 years, engaged as a commercial traveler, as buyer or seller for wholesale or commission house or manufacturer, or any whole- sale dealer, importer, commission merchant, or manufacturer, is eligible to membership in this association.

### "Instructions to Applicants.

"When desirous of dividing the amount due your beneficiary, you must do so in fractions, viz. one-fifth, one-fourth, etc., as you desire. The beneficiary's Christian name must be given in all cases, and the beneficiary must be a member of the family of the applicant. Applications must be accompanied with five dollars, which pays the semiannual dues. The annual dues are ten dollars, payable either annually or semiannually, in advance, on July 1st and January 1st, as the applicant may direct, one dollar of which goes to the state division, one dollar to the post (where there is no post, two dollars to the state division), two dollars to expense fund, and six dollars to benefit fund.

### "Objects.

"(1) To secure the repeal of all municipal, county, state, or territorial laws imposing or enforcing a license tax on commercial travelers. (2) To secure recognition from railroads, and obtain as favorable terms on transportation and baggage as are given to any other class of travelers, and to adjust all differences between railroads and commercial travelers on a fair, equitable basis. (3) To secure hotel accommodations commensurate with price paid. (4) To elevate the social and moral character of commercial travelers as a profession, and to bring about the better acquaintance of members. (5) To provide a benefit fund in case of death by accident or injury by accident. (6) To secure business connections for unemployed members.

"I, ————, being desirous of becoming a member of the Travelers' Protec- tive Association of America, inclose herewith a membership fee of five dol- lars, and do warrant the following statements to be true: I do hereby certify that I am engaged in the capacity of a commercial traveler, salesman, or buyer, wholesale dealer, importer, commission merchant, or manufacturer, engaged in a legitimate commission, wholesale, or manufacturing business, and that I will comply with all the requirements of the constitution and by- laws of said association, and the terms of the certificate of membership to be issued to me, and that I have answered all questions asked in this appli- cation truthfully and to the best of my knowledge and belief, and I hereby agree that any misstatement or concealment of any facts will cause a for- feiture of membership in said association, and that this application is a part of my certificate with the Travelers' Protective Association of America; and I hereby expressly waive any and all provisions of law now existing, or that may hereafter exist, preventing any examining or attending physician from disclosing any information acquired while acting in a professional capacity or otherwise, or rendering him incompetent to testify as a witness in any way whatever.

### "Benefits.

"Five thousand dollars in case of death by accident. Twenty-five dollars weekly indemnity, not to exceed fifty-two weeks, in case of accident. Two thousand five hundred dollars, loss of both legs or arms. Two thousand five hundred dollars, loss of one arm and one leg. One thousand dollars, loss of one hand or one foot. Five thousand dollars, loss of both eyes. One thou- sand dollars, loss of one eye.

"(1) My full name is J. W. Corley. (2) My age is 52. My height is 5 feet 7½. My weight is 165. (3) My address for mail, 635 W. Main. (4) Name of firm, Steng & Thalheimer. Business, boots and shoes. (5) Location of firm, Louisville, Ky. (6) My occupation is salesman. (7) The duties of same are salesman. (8) In case of death the benefits of my certificate shall be payable to: (a) Give individual name in full: Miss Sallie H. Corley. (b) Residence, 635 W. Main street. (c) Relationship, if any, adopted daughter. (9) What state division do you wish to be placed in? Kentucky. What post? D. (10) Are you now, or have you ever been, a member of any other state division of this association? No. (11) Have you ever had, or are you now subject to, fits or any disorders of the brain, or any mental or physical infirmities, which would thereby render you liable to personal injuries? No. (12) Do you drink wine, spirituous, or malt liquors to excess? No. (13) Do you understand that in case of accidental injuries, or death resulting from intoxication, you or your beneficiary will receive no benefits? Yes.

"This is to certify that I have carefully read the application herewith presented, and have answered all the questions herein contained truthfully, to the best of my knowledge and belief."

The association was composed of certain divisions and posts, there being a division known as the "Kentucky Division," which had a post known as "Post D," located at Louisville, Ky. This post has a president, vice president, secretary and treasurer, and board of directors. The applications of a number of persons were made at the same time as that of Corley, and the amount of money required for the dues was forwarded to the state board of directors, who pass upon the eligibility of a member. The applications were then forwarded to St. Louis, the national headquarters of the organization, where the members, including Corley, were accepted. The money which was required to accompany the application was paid to the post secretary, who forwarded it to the state secretary, who in turn forwarded it to the national secretary. Upon the election of the applicant, the national secretary notifies the secretary of the division. The national secretary issues the certificate of membership, which is forwarded through the secretary of the division to which the member belongs. Corley had paid his dues up until the time of his death, and was not in default. The testimony tended to show that Corley was killed by an insane person, incapable of forming intent to take life at the time of the shooting. The constitution contains a provision that "no action against this association for the recovery of any claims arising under the certificate of membership, or the constitution and by-laws, shall be sustained unless commenced within six months after the refusal of the association to pay the same, and the lapse of such period shall be conclusive evidence against the validity of any claim asserted if an action for its enforcement be subsequently commenced." This limitation was relied upon by the company. For the plaintiff, it was claimed it could have no effect, because of the Kentucky statute cited in the opinion.

W. W. Thum, for plaintiff in error.

Clarence Dallam, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The learned judge who tried this case directed the jury to return a verdict in favor of the association, being of the opinion that the contract of insurance was made in Missouri, and therefore not controlled by the Kentucky statute, and consequently the action was barred by the contract of limitation of the action entered into by the association and member, because of failure to bring the suit within six months after the claim was rejected. The Kentucky Statutes (section 679) provide:

"All policies or certificates hereafter issued to persons within the common-wealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws or other rules of the corporation, either as form-ing part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portions of the constitution, by-laws or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution, by-laws or other rules shall be received as evidence in any controversy be-tween the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. The said policy or certificate, application, constitution, by-laws or other rules shall be plainly printed, and no portion thereof shall be in type smaller than brevier: provided, however, that nothing in this section shall be construed as applying to health certificates or constitutional receipts, or other evidences used in reinstatement of a policy or certificate."

The purpose of this statute is apparent, and requires that the por-tions of the constitution and by-laws or rules of the association which are to form part of the policy or contract between the parties, or to have any bearing upon the same, shall be plainly printed and attached to the certificate. It has become so common as to have occasioned judicial comment in more than one instance, that par-ties obtaining insurance may be misled from the failure to read the many conditions and stipulations inserted in fine-print clauses of policies or embodied in the provisions of lengthy constitutions. This statute is designed to place the conditions upon which the policy is issued in plain and direct form upon the certificate or policy, in order that the policy holder or member may become acquainted with the provisions of his contract, and leave no room to claim that he has made any other or different contract. The present case is a good illustration of the fairness and wisdom of such a course. Upon the face of the certificate issued to a member, it is apparent that the constitution and by-laws contain a statement of the measure of obligation undertaken by the company to the assured; yet this con-stitution is not set forth, and there is nothing upon the certificate to indicate to the member the short period of limitation within which an action must be brought. The beneficiary, finding a certificate among the effects of the deceased person, but not discovering the con-stitution, may have no notice of this short period of limitation, and be led to rely upon the general law of the state, which in the present case, we are advised, is five years from the time the cause of action accrued. The purpose and meaning of the statute are plain. Does it apply to this case? The statute, in terms, seeks to regulate cer-tificates issued to persons within the commonwealth of Kentucky by corporations transacting business therein. The right of a state to determine upon what terms it will permit foreign corporations to do business within its borders is too well established to need comment. Repeated adjudications of the supreme court of the United States have established the doctrine that foreign corpora-tions do business in a state as a matter of grace, and not of right, and the state may prescribe such rules as it may see fit to regulate the privilege granted, and to protect its citizens from the abuse of corporate powers. Insurance Co. v. Daggs, 172 U. S. 557, 19 Sup.

Ct. 281, 43 L. Ed. 552; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657; Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; Insurance Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116.

The learned judge, in granting the prayer for peremptory instruction in favor of the association, made the case turn upon the consideration that the certificate of membership was issued in the state of Missouri. We do not think this proposition necessarily determines the case, although in this connection it may be remarked the certificate was forwarded through the office of the company in Kentucky, first to the state division, and thence reaching Corley. The certificate was within the control of the company's agents until delivered to Corley. This statute, in using the terms "certificate issued," refers to the well-known practice of such companies to grant certificates of membership which shall entitle the recipient to the benefits of the insurance. In analogy in this respect to policies of insurance, the certificate purports to be a contract of insurance, giving the "benefits" in case of death to the beneficiary. The true test, in our judgment, is whether the obtaining of this membership—the issuing of this certificate—was transacting business within the commonwealth of Kentucky with persons therein. An examination of the facts shows that all the essential business in obtaining the memberships was transacted in Kentucky. In that state the association had established a division. There it received applications and enrolled members, and passed upon their eligibility before forwarding the application to the home office. The local post of which Corley was a member was organized and had its habitation at Louisville, Ky. There the dues of members were paid, benefits were dispensed, and, except the forwarding of the applications and money to the home office for its action, all the essential features of the business were transacted. In the light of this proof, we cannot doubt that, within the meaning of this statute, this corporation was transacting business and issuing certificates to persons within the commonwealth of Kentucky. If it were not so, the company may have all the benefits of collecting dues, organizing divisions and posts, holding meetings, and otherwise carrying on its business, and avoid the force of statutes passed to regulate business of such character in Kentucky, by simply maintaining its home office at its place of organization, and there finally passing upon applications for membership. We think this statute was passed with a view to bringing within its terms and subjecting to its provisions corporations which might avail themselves of the right to transact such business in the state. It is urged that there is no proof that the association had ever applied for the privilege of doing business under this statute, or was acting thereunder. This can make no difference, if by the terms of the law the company came within its provisions. The fact that it saw fit to transact business within the state required it to comply with the laws thereof, and, having had the benefit of such business and received the money of the assured in that state, it is deemed to have submitted to the jurisdiction thereof. Berry v. In-

demnity Co. (C. C.) 46 Fed. 439. It is further urged that this statute had no application, because the association is not of the character which the law undertakes to regulate. Section 641, Ky. St., provides:

"The words 'insurance company or insurance corporation,' as used in this article, shall be held to mean and include any association, individual, company or corporation, partnership or joint stock company engaged in or carrying on, in any manner, the business of insurance in this state, except that the provision of this chapter or article shall not apply to secret or fraternal societies, lodges or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission nor employ any agents, except in the organization of and supervision of the work of local subordinate lodges or councils."

Section 664 provides:

"Any corporation, association or society which issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the decease of a member, any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society, to the legal representative of such member, or to the beneficiary designated by such member, which money, benefit, charity, relief or aid is derived from voluntary donations or from admission fees, dues and assessments, or any of them, collected or to be collected from the members thereof, or members of a class therein, and interest and accretions thereon, or rebates from amounts payable to the beneficiaries or heirs, and wherein the paying, providing or rendering of such money or other benefit, charity, relief or aid is conditioned upon the same being realized in the manner aforesaid, and wherein the money or other benefit, charity, relief or aid is applied to the uses and purposes of such corporation, association or society, and the expenses of the management and prosecution of its business shall be deemed to be engaged in the business of life insurance upon the co-operative or assessment plan, and shall be subject only to the provisions of this subdivision."

Also section 665:

"Any corporation, association or society which issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the sickness or other physical disability of a member, and not by reason of having attained a certain age, any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society, to such member or beneficiary designated by him, which money, benefit, charity, relief or aid is derived from voluntary donations or from admission fees. dues, assessments, or any of them, collected or to be collected, from the members thereof, or members of a class therein, and interest and accretions thereon, and wherein the paying, rendering or providing of such money, or other benefit, charity, relief or aid is conditioned upon the same being realized in the manner aforesaid, and wherein the money or other benefit, charity, relief or aid is applied to the uses and purposes of such corporation, association or society, and the expenses of the management and prosecution of its business, shall be deemed to be engaged in the business of casualty insurance upon the co-operative or assessment plan, and shall be subject only to the provisions of this subdivision."

The constitution of the association was put in evidence, afterwards excluded by the court, and was not formally offered, except the sections regarding the amount of the recovery and the limitation of the action. However, the defendant attaches to its answer as an exhibit a copy of the constitution, which, it appears, was compiled several years after the issuing of the certificate, but there is no suggestion that it is not the constitution in force at the time of the issuing of the certificate in question; and when thus introduced into.

the record by the association, although the reply makes the issue that it is not a true copy of the constitution, we may look to it, so far as the association is concerned, with a view to determining the character of the organization, and we find that the annual dues of the association are $10, apportioned $1 to the post, $1 to the state division,—where there is no post, $2 to the state division,—$6 to the general indemnity fund, and $2 for general expenses. Section 1, art. 6. Further:

"Whenever the indemnity or benefit fund is reduced by the payment of indemnity claims to less than $5,000, the board of directors may order an assessment, not to exceed two dollars, upon each member of the association, a notice of said assessment to be mailed to each member by the national secretary; and all members failing to pay said assessment within thirty days shall cease to be members of this association." Section 3, art. 6.

Article 9 provides:

"Section 1. The indemnity or benefit fund shall be established and maintained out of the annual dues, as prescribed in section 1 of article 6, and the membership fee, as prescribed in section 2 of article 2."

We think the association comes within the provisions of the Kentucky statute just cited; for, while it has among its purposes the promotion of acquaintance and friendship among traveling men, and to obtain for them better railroad rates and hotel accommodations, it may be said to be its principal purpose to provide a benefit fund for members in case of death or accident. This fund is derived from dues, and when depleted is replaced by assessment upon members. The certificate of membership provides for payment of a specific sum for death by accident. Provisions are made for enforcing and collecting the payment of dues. We think this association comes under the Kentucky statute, unless it is within the exception embodied in section 641 of the statutes. We find nothing in the organization of a secret or fraternal character. We do not find the supervision of a grand or supreme body and members secured by the lodge system exclusively. Not all commercial travelers may become members entitled to the benefits of the insurance. An application is required, setting forth the willingness of each applicant to submit to a physical examination, and waiving all provisions of law now existing or that may hereafter exist preventing any examining or attending physician from disclosing any information acquired while acting in a professional capacity or otherwise, or rendering him incompetent to testify as a witness in any way whatever. The "benefits" are stated at a fixed amount in case of death, and certain specific sums for various injuries. It is evident that persons not answering these questions satisfactorily, though otherwise eligible, would be rejected as members. We do not discover in this association the features which characterize associations which the statute exempts from its provisions. We are strengthened in this conclusion by a letter from the superintendent of the insurance department of Missouri, which seems to have been admitted without objection, wherein it is declared:

"After an examination of the constitution and by-laws of the Travelers' Protective Association of America, forwarded by you to this department, I

beg leave to inform you that the association not only fails to meet the requirements of the law governing this class of organizations, in reference to having a lodge system with ritualistic form of work," etc.

We concur in the view herein expressed that the association has no lodge system, with ritualistic form of work, and, we may add, no lodge system by means of which members are exclusively secured. In order to exempt it from the requirements of the Kentucky statute above quoted, it must secure its members through that system exclusively. We are, therefore, of opinion that this association was one coming within the purview of the Kentucky statute, and was transacting business when it obtained members and issued certificates to persons within that commonwealth. The provision of the constitution relied on was therefore required to be printed upon or attached to the certificate, and for failure to comply with the law in this respect the limitation is not a defense.

It is urged that this construction will prevent the plaintiff from recovery under this certificate, as the constitution must be looked to in order to make out a recovery of any amount, and no part of it is printed upon the certificate. But we find that the certificate undertakes that the "benefits," in case of death, shall be payable to the beneficiary. It does not introduce any new element of contract between the parties to ascertain the amount of this benefit from the constitution. The purpose of this statute is to require the company, in its policy or certificate, to bring all of the provisions of the contract to the attention of the insured, and definitely fix the conditions of the insurance beyond the power of others to change or enlarge the contract after his decease. To escape payment because the certificate did not comply with the statute, by failing to print the provisions fixing the amount to be recovered in case of death, would be permitting the company to avoid the contract by its own wrong in failing to comply with the statute.

It is urged further by defendant in error that it was correct to instruct the jury for the defendant, because it appears that, Corley having been killed by a gunshot wound inflicted by another, his death was not accidental, and that the company was not liable for death by intentional injury. We think it is the true rule that if the deceased was killed by one incapable of distinguishing between right and wrong, or forming a rational intent to do the act, then the death would not be intentional, any more than it would be if it happened through some unforeseen accident. There is testimony in the record tending to show that the slayer of Corley was insane at the time of the act, sufficient to carry the question to the jury.

It is also urged that the beneficiary was not adopted in accordance with the laws of Kentucky, and therefore had no insurable interest in the life of the assured. The record of adoption, it is said, does not disclose that the wife of Corley, then living, joined in the application for adoption. We think, however, for the purposes of this case, the adoption is sufficiently shown, and against collateral attack it will be presumed that the statute of Kentucky was complied with; there being nothing in the record to exclude this conclusion.

We think, therefore, that the case should have been submitted to

the jury upon the issue of intentional killing, and that the court erred in holding the case barred by the six-months limitation contained in the constitution. The judgment is reversed, and the cause is remanded for further proceedings in accordance herewith.