MONROE v. FIRST NATL. LIFE INS. CO.

(May 2, 1932. Opinion and Decree.)

A. H. Reed and Henry J. Wyman, of New Orleans, attorneys for plaintiff, appellee.

Normann, McMahon & Breckwoldt, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Clem Monroe claims the sum of $84 for twelve weeks' disability under an insurance policy issued in his favor by the defendant and, also, a penalty for a like amount and $50 additional for attorney's fees under Act No. 310 of 1910, alleging that the disability was the result of an accident on April 14, 1931.

The defense is that the disability resulted from the intentional act of one James Edwards in wounding plaintiff with a pistol by shooting him in the thigh, which risk is specially excepted from coverage by clause 9 of the conditions of the policy sued upon reading, in part, as follows:

"Disability or death benefits will not be paid * * * at any time for disability or death resulting from * * * an intentional act of any person other than the insured. * * *"

There was judgment in favor of plaintiff for the sum of $84 and rejecting his demand for the penalty and attorney's fees. Defendant has appealed.

It is admitted that plaintiff received his injuries as a result of being shot by James Edwards, who was caught by the plaintiff in the act of stealing phonograph records belonging either to the plaintiff or his employer. It is also conceded that the period of disability for which claim of indemnity is made was twelve weeks.

The plaintiff contends, first, that Edwards shot him unintentionally while trying to shoot one Arthur Baptiste, and, secondly, that at the time of the trouble Edwards was so drunk as to be incapable of forming any rational intent.

It appears to be well settled that the intentional injury clauses usually inserted in health and accident policies are reasonable and, hence, are binding upon the parties to the contract. Couch on Insurance, sec. 1240; Vance on Insurance (2d Ed.) 896; Cooley's Briefs on Insurance (2d Ed.) vol. 6, 5364.

The law is clear that, when a person is injured by another, who has the intention to injure a third party and not the person injured, the intentional injury clause cannot be successfully interposed as a defense against the injured party claiming the insurance benefit. Couch on Insurance, sec. 1240; Vance on Insurance (2d. Ed.) 897; Cooley's Briefs on Insurance (2d Ed.) vol. 6, 5370; Mah See v. North American Acc. Ins. Co., 190 Cal. 421, 213 P. 42, 26 A. L. R. 123; General Accident, Fire & Life Assur. Corp. v. Hymes, 77 Okl. 20, 185 P. 1085, 8 A. L. R. 318; National Life Ins. Co. v. Coughlin, 72 Colo. 440, 212 P. 486; Cooper v. National Life Ins. Co., 212 Mo.

App. 266, 253 S. W. 465; Newsome v. Travelers Ins. Co., 143 Ga. 785, 85 S. E. 1035.

Defendant concedes that the overwhelming weight of authority is that the intentional injury clause of an accident policy cannot be invoked where the person causing the injury is so insane or drunk as to be incapable of forming any rational intent. Couch on Insurance, sec. 1240; Cooley's Briefs on Insurance (2d Ed.) vol. 6, 5372; Berger v. Pacific Mut. Life Ins. Co. (C. C.) 88 F. 241; Corley v. Travelers' Protection Ass'n, 46 C. C. A. 278, 105 F. 854; Marceau v. Travelers' Ins. Co., 101 Cal. 338, 35 P. 856, 36 P. 813; Markland v. Clover Leaf Casualty Co. (Mo. App.) 209 S. W. 602; Zimmerman v. Southern Surety Co. (Mo. App.) 241 S. W. 95; Northwestern Society v. Dudley, 27 Ind. App. 327, 61 N. E. 207; Travellers' Ins. Co. v. Houston, 3 Wilson, Civ. Cas. Ct. App. (Tex.) sec. 429, page 508.

The first question is: Did Edwards intentionally shoot the plaintiff, or unintentionally or accidentally shoot him?

The plaintiff testified that he was employed in a soft drink establishment, and that James Edwards came into the place about 2 o'clock in the morning, accompanied by some women, and that all the parties were very drunk; that they danced for awhile and then one of the women told him that Edwards was stealing the phonograph records; that he asked Edwards to surrender the records and threatened to call the police if he did not do so; that Edwards drew a knife but plaintiff took it away from him; that Edwards then went into the front room, where Arthur Baptiste was, and said to him: "I am going to kill all three of you ————"; that Edwards shot at Baptiste and the bullet came through a curtain into the next room, where plaintiff was, and entered his thigh, breaking the bone, and that they then took the gun away from Edwards and caused him to be arrested. On cross-examination counsel for the defendant interrogated plaintiff as to his testimony given in the criminal district court, where Edwards was charged with the crime of shooting plaintiff with intent to murder. He was asked if it was not a fact that he had testified in the criminal district court that, after being informed that Edwards stole the records, he went up to him and took the records out of his bosom, and that, when Edwards attempted to cut him with a knife, he took it away from him and thereupon Edwards drew his revolver and shot him in the leg. He at first denied that he had made such a statement, but later admitted he had done so, and then counsel for defendant produced a certified copy of the testimony given by the plaintiff in the criminal district court, which flatly contradicts him and impeaches his testimony, and shows conclusively that Edwards deliberately and intentionally shot plaintiff.

Arthur Baptiste, as a witness for the plaintiff, testified that Edwards shot at him while he was in the front room and the plaintiff was in the adjoining or middle room, and, as the bullet missed him, it went through the curtain and struck plaintiff accidentally. This is in direct contradiction of the testimony given by the plaintiff in the criminal court. Baptiste did not testify in the criminal court because it appears that he moved to another address and the district attorney's office was unable to have him subpoenaed.

Stanley Auston, plaintiff's witness, testified that he and not the plaintiff owned the soft drink establishment where the shooting occurred, and that plaintiff was merely working for him, which corroborated the plaintiff's statement made on the trial of this case, but which is in contradiction of plaintiff's testimony given as a witness

in the criminal court, where he stated he owned the place.

John H. Dew, an officer of the defendant company, testified that the plaintiff told him the same story that he told in the criminal district court, when Edwards was tried for shooting the plaintiff. The narration of the occurrence given by plaintiff in the criminal court was clear and to the point and in keeping with usual happenings in such affairs, whereas his testimony on the trial of this case was very indefinite and unimpressive.

We have carefully studied the record and given full consideration to the fact that plaintiff is an illiterate negro, but his testimony in the criminal district court impeaches and contradicts the testimony that he gave in this case, in so many material respects that we feel it cannot be the result of lack of memory, ignorance, or oversight. It is, therefore, our opinion that the plaintiff's testimony given on the trial in the criminal court, not only effectively impeaches his own testimony and contradicts that of Baptiste, but also affirmatively proves that he was intentionally shot by Edwards. Thompson v. Haubtman, 18 La. App. 119, 137 So. 362; Jones' Commentaries on Evidence (2d Ed.) vol. 2, 1646, 1647, 1648.

The plaintiff's contention that Edwards was so drunk as to be incapable of forming any rational intent is without merit, because, while the evidence tends to show that Edwards had been drinking, we are convinced that at the time he shot the plaintiff he fully appreciated what he was doing and was in full possession of his faculties.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the defendant, dismissing the suit at plaintiff's cost.