[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 69 
Plaintiff, Henderson Davis, who shot and killed his wife, Della Davis, brought this suit against defendant insurance company, claiming that he, as the designated beneficiary, is entitled to recover the sum of $240, the proceeds of a policy of life insurance dated December 29, 1941, issued by defendant, insuring the life of Della Davis.
The Civil District Court rendered judgment for plaintiff in accordance with his prayer. Defendant has appealed.
The insurer defends upon the ground that the deceased died as the result of a gunshot wound intentionally inflicted by the plaintiff, and that it would be against the public policy of the State to allow plaintiff to recover the insurance proceeds, and further that the death, having resulted from the intentional act of a person other than the insured, is specifically excluded from the risk. The answer alleges that plaintiff intentionally shot and killed Della Davis.
Upon the trial of the case below, defendant called two officers of the New Orleans Police Department as witnesses, who testified that on the night of September 18, 1946, Henderson Davis surrendered himself at their station, telling them that he had shot his wife with a forty-five calibre pistol, which he turned over to the officers. The officers proceeded with Davis to his home, 541 Vallette Street, where the shooting had occurred, and there they found the body of Della Davis in the second room with a gunshot wound in the head. Davis told the officers that after an argument his wife threw a lamp at him and he shot her.
Henderson Davis was called by defendant's counsel for cross-examination under Act No. 115 of 1934. His statements are to the effect that at 8:30 that night Della Davis left 1201 Orleans Street, where she and Davis operated a place of business, to go home; that when Davis reached home at about 10:30 o'clock, he was surprised in not finding his wife there. He waited for her in the front room; she arrived at 11:30, took off her shoes at the door, and attempted to sneak into the house. When asked where she had been, she told Davis that that was none of his business. After ordering her to leave the house, and removing her clothing from a chifforobe and placing them upon a table, Davis went to where their money was kept, and at this point Della Davis grabbed the lighted kerosene lamp and raised it at him. Davis stated that he was "scared" of the lamp and picked up the pistol, which was lying where the money was, and waved it to frighten her, and that the pistol went off accidentally and Della fell. Davis was asked: "You were cool and calculated at the time?" and he answered: "Very much so."
Plaintiff's counsel then interposed an objection "to this type of testimony." The trial judge, in sustaining the objection, ruled: "The Court: Sustained, for this reason; when you put a witness under the Act, you are confined to the allegations of the petition. You can't pull him out there to make out your case. If you want to do that you have to tender him as your own witness. I sustain the objection to that line of questioning."
This ruling terminated the cross-examination of Davis. No evidence, save his testimony and that of the police officers, is to be found in the record.
The policy clauses relied upon by defendant, so far as pertinent here, are to be *Page 70 
found in paragraph 4 of the "Conditions" on the reverse side of the policy, and read:
"4. Incontestability. — This Policy shall be incontestable after one year from date of issue except for non-payment of premiums and except for misstatement of age of the Insured, and except for the following provisions of this paragraph: Benefits will not be paid at any time for death resulting from any disease contracted or injuries sustained before the date of this Policy nor at any time for death resulting from violation of law, immorality, alcoholism, venereal diseases or from an intentional act of any person other than the Insured. * * *"
Defendant's attorney contends that plaintiff's testimony demonstrates that the act of Della Davis in raising the lamp to strike plaintiff constituted an assault, an offense punishable by the criminal laws of the state, and that her death, which resulted from such violation of the law, is excluded from policy coverage.
We notice, however, that defendant failed to allege a special plea setting forth that the deceased died as the result of any violation of the law, nor were any facts alleged from which it can be reasonably inferred that defendant raised or intended to rely upon such defense; consequently we cannot pass thereon. An insurer, to be heard on a denial of liability for loss caused in a certain manner, which would have otherwise fallen within the general terms of the policy, must allege the applicable provision of the policy and also the facts relied upon to bring itself within such policy provisions. 46 C.J.S., Insurance, § 1297, p. 356; Cahn Wachenheim v. Fidelity 
Casualty Co., 157 La. 238, 102 So. 320; Coleman v. Universal Life Ins. Co. of Memphis, Tenn., La. App., 157 So. 411.
We are much concerned with the defense that Della Davis's death resulted from the intentional act of a person other than herself, which risk is specially excepted from coverage in paragraph 4 above quoted.
A provision in a policy, providing that coverage will not extend to injuries or death resulting from the intentional act of the insured or any other person, is valid and binding, and, hence, no recovery can be had for injuries or death so inflicted. 45 C.J.S., Insurance, § 772, p. 800; Monroe v. First National Life Ins. Co., 19 La. App. 700, 141 So. 471.
Plaintiff's counsel argues that the clause can avail the insurer nothing. His position is that the policy is misleading and deceptive, because on its face reference is made to "the Provisions and Benefits printed or written on the reverse side," while on the reverse there appears the heading in boldface type "Conditions," under which is found twelve numbered paragraphs each with a subheading. This, argues counsel, is sufficient to confuse an unwary policyholder, because a reasonably prudent person would expect to find on the reverse side "provisions and benefits," and not "conditions," some of which limit the insurer's liability in certain cases and exclude liability in other cases.
We cannot agree with counsel that the policy is misleading or deceptive. It is stated on the face that "the Provisions and Benefits printed or written on the reverse side are a part of this Policy as fully as if recited over the signatures hereto affixed." It seems to us that this is sufficient to apprise a policyholder that his entire contract with the insurance company was composed not only of the general insuring clauses on the face of the policy, but that there was something printed or written on the reverse side which was as well a part of the contract. There is no valid reason why the stipulations printed on the reverse side, merely because they appear as "Conditions" and not "Provisions and Benefits," should be disregarded. This is not one of those cases wherein the clause was printed in small type and intermingled with various conditions and warranties on the reverse side of the policy. All provisions listed under the "Conditions" are in type of the same size.
Plaintiff's counsel makes the further contention that no effect is to be accorded the clause, because it appears in *Page 71 
the paragraph containing the subheading "Incontestability." His argument is that incontestability provisions are inserted in policies for the purpose of vouchsafing to the insured that after a stated period during the lifetime of the insured most of the defenses which might otherwise be available to the insurer will be cut off. He complains that in the policy under consideration the insurance company has used the incontestability clause for a perverted purpose, and that it would be against good conscience to permit the insurer in such clause, which the policyholder has the right to expect will be to his benefit, to limit or exclude its liability.
This contention is not well founded. Incontestability clauses containing exceptions from coverage are not new or novel in this state. In Bernier v. Pacific Mutual Life Ins. Co. of California, 173 La. 1078, 139 So. 629, 630, 88 A.L.R. 765, the Court said: "We regard the decision cited, therefore, as authority for the proposition merely that a life insurance company may, without doing violence to a provision making the policy incontestable after a stated period, except from the so-called coverage, or risk assumed, any cause of death that the company sees fit to except, provided, of course, that the exception shall be expressed so plainly in the policy as to leave no reasonable doubt that the exception is to remain after the policy shall have become otherwise incontestable. * * *"
In the very recent case of Gordon v. Unity Life Ins. Co.,215 La. 25, 39 So.2d 812, 813, (which, incidentally, was decided after the judgment before us was rendered), the incontestability clause of the policy read thus: "Incontestability. — This Policy shall be incontestable after one year from date of issue except for non-payment of premiums, and except as to the following provisions and conditions relating to misstatement of age; death resulting from disease as herein limited; accidental death; suicide; total and permanent disability, aeronautics, military and naval service."
In the next paragraph was the clear provision that benefits would not be paid at any time for death resulting from venereal disease. The Court found that such provision was unambiguous, certain, and susceptible of only one interpretation, that is that if the insured died as the result of a venereal disease, that death was not covered under the terms and provisions of the policy. The insured died from venereal disease, and in denying the beneficiary's claim, the Court said: "In our opinion, the insurance policy in the instant case in clear and unambiguous language provides that the risk — that is, death by venereal disease — is not covered by the contract. The Court of Appeal so found, and we think correctly so."
The only difference we see between the policy in the Gordon case, supra, and the policy before us is that in the former the incontestability clause provided that the policy shall be incontestable after one year, except from "death resulting from disease as herein limited", and immediately following this provision, in the next paragraph of the policy, was found the provision that benefits will not be paid at any time for death resulting from venereal diseases. In the instant case, the incontestability clause, after setting forth that after one year the policy would be incontestable, contains these words: "* * * except for the following provisions of this paragraph." Then appears the clear and unambiguous sentence stipulating that benefits will not be paid at any time for death resulting from an intentional art of any person other than the insured. The two cases cannot be distinguished in any other respect.
Adverting now to the defense that it would be against the public policy of the State to permit Henderson Davis to recover, we find that it is well recognized, as a matter of public policy, that a beneficiary named in a life insurance policy is not entitled to the proceeds of the insurance if he or she feloniously kills the insured. American National Life Ins. Co. v. Shaddinger, 205 La. 11, 16 So.2d 889.
Defendant's counsel complains that he was denied the right to pursue his cross-examination of plaintiff by the ruling of the court hereinabove quoted. We agree that the ruling was clearly erroneous. *Page 72 
The purpose of Act No. 115 of 1934 is to give parties litigant in all cases tried in any court of this state the right to examine their opponents under cross-examination, without vouching for the truth of their testimony or becoming bound by their answers.
The act does not in any manner limit cross-examination, and we fail to comprehend why the cross-examination of the plaintiff should have been confined merely to the allegations of the petition, as the judge ruled. We know of no statute law providing, nor of any authority holding, that a defendant may not cross-examine a plaintiff on all issues in the case, or that the defendant must tender plaintiff as his own witness anent issues raised by the answer.
The only restriction of which we are aware is that the interrogation should be confined to the issues presented by the pleadings. Franklin v. New Orleans Public Service, Inc., La. App., 187 So. 126, and a "good deal" of latitude is generally allowed, Schwing v. Dunlap, 130 La. 498.
The rule prevailing in this state is that a witness on his cross-examination may be interrogated upon matters wholly unconnected with those upon which he was examined in chief. King v. Atkins, 33 La. Ann. 1057; Davidson v. De Lallande, 12 La. Ann. 826.
We can think of no reason why the same rule should not prevail when the cross-examination is conducted under Act No. 115 of 1934. Every witness is sworn to tell the truth, and if the defendant is to be deprived of the right of examining the plaintiff on matters material to his defense, the act would be rendered nugatory. Henderson Davis is the only person who can say exactly what happened on the night Della Davis died. A full and thorough cross-examination of Davis was of transcendent importance to the insurance company's cause, and there can be no doubt that the judge's ruling denied defendant its day in court.
We find it impossible to determine the validity of the defenses made, because of the unsatisfactory state of the record, and believe that the case should be remanded to the court below for further proceedings, so that the defendant may have the opportunity of completing the cross-examination.
The case is defended upon two serious grounds, and we are entitled to the benefit of all evidence bearing upon the issues. We are not at all satisfied with the testimony of Henderson Davis, and whereas we have decided to remand the matter for further proceedings, all or any new or additional testimony which either party desires to introduce relevant to the case should be received and admitted by the court.
The Supreme Court, in determining American National Life Ins. Co. v. Shaddinger, supra, considered, along with the other evidence, the fact that the district attorney and the grand jury, after an investigation of the case, concluded that the killing of the insured was done in lawful self-defense.
Of course, a knowledge of whatever action, if any, was taken by the district attorney, and whether the grand jury returned a bill of indictment, would be of benefit to the court. Such evidence, however, could have only a persuasive effect and would not be binding upon us. For example, in Southern Life and Health Ins. Co. v. Mack, La. App., 17 So.2d 370, we denied recovery to the beneficiary who had killed the insured, although charges in the Criminal District Court had been nolle prosequied.
Article 906 of the Code of Practice provides: "But if the court shall think it not possible to pronounce definitely on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law."
Where the evidence is unsatisfactory and indefinite, and circumstances indicate that new evidence may be produced *Page 73 
to clarify the cause, the ends of justice require that the case should be remanded. McDaniels v. Doll, La. App., 40 So.2d 530; McClung v. Delta Shipbuilding Co., La. App., 39 So.2d 754; Bonnelucq v. Bernard, La. App., 33 So.2d 433; Gaines v. Standard Accident Ins. Co., La. App., 32 So.2d 633; Fogelman v. Interurban Transp. Co., 192 La. 115, 187 So. 73; Wicker v. Metropolitan Life Ins. Co., La. App., 172 So. 879.
For the above reasons, the judgment appealed from is reversed, and it is now ordered, adjudged, and decreed that this matter be remanded to the lower court for further proceedings consonant with the views hereinabove expressed. The costs of this appeal are to be borne by plaintiff, and all other costs are to await the final determination of the case.
Reversed and remanded.