NORTHWESTERN BENEVOLENT SOCIETY *v.* DUDLEY.

[No. 3,478. Filed October 2, 1901.]

ACCIDENT INSURANCE.—*Complaint.—Intentional Injury.*—An averment in a complaint on an accident insurance policy that the injury was inflicted unintentionally is not overcome by the statement that the person who caused the injury was in a state of intoxication to such an extent that he did not know that he was inflicting the injury. *pp. 328, 329.*

DRUNKARDS.—*Responsibility.—Intent.*—While drunkenness is no excuse for crime, the law recognizes, both in civil and criminal proceedings, that one may become so intoxicated as to be incapable of having an intention. *p. 329.*

ACCIDENT INSURANCE.—*Proofs.—Waiver.—Special Finding.*—A finding upon which judgment was rendered for plaintiff in an action on an accident insurance policy is not defective because of the failure of the court to find that proofs were made prior to the bringing of the suit, where it was found that notice of the injury accompanied by the certificate of a physician was furnished, and that no further notice, certificates or proofs of said injury were requested or required from plaintiff on the part of the defendant. *p. 330.*

SAME.—*Consideration for Issuance of Policy.—Payment.—Special Finding.*—A finding in support of a judgment for plaintiff in an action on an accident insurance policy is not fatally defective because of failure to find that the policy was issued in consideration of any payment by plaintiff, where it appears from the record that payment was treated as an admitted fact. *p. 330.*

SAME.—*Intentional Injury.—Drunkards.—Special Finding.*—An accident insurance policy provided that benefits could not be recovered for "intentional injuries inflicted by the insured or any other person." Plaintiff brought suit for benefits for an injury to his thumb caused

by an intoxicated person. The court found that the person who committed the assault "was intoxicated to such a degree that he did not know or realize the fact that he was assaulting or had assaulted the plaintiff, and did not know at the time he was doing so that he was biting or had bitten the plaintiff's thumb," etc. *Held,* that the finding was equivalent to a finding that the injury was committed unintentionally. *pp. 330, 331.*

ACCIDENT INSURANCE.—*Intentional Injury.*—*Drunkards.*—*Evidence.* —*Special Finding.*—A finding in an action on an accident insurance policy for benefits on account of injuries sustained by plaintiff from an assault by an alleged drunken man that the person who committed the assault was intoxicated to such a degree that he did not know that he was assaulting plaintiff is not sustained by the evidence, where it was shown that he knew what he was doing up until the time he committed the assault and that he washed the blood from his own face and said he did not want it to get out how he got the blood on his face. *pp. 331-333.*

From Sullivan Circuit Court; *W. W. Moffett,* Judge.

Action by Oliver J. Dudley against the Northwestern Benevolent Society on an accident insurance policy. From a judgment for plaintiff, defendant appeals. *Reversed.*

*O. B. Harris,* for appellant.

*J. S. Bays* and *L. F. Bays,* for appellee.

COMSTOCK, J.—The complaint is in one paragraph. It alleges the issuing of a policy to appellee (who was plaintiff below). The policy is made a part of the complaint. By its provisions appellee became entitled to certain indemnity in the event of total disability by reason of bodily injury effected solely through external, violent, and accidental means. That appellee did receive an injury while the policy was in force, occasioned by the biting of his thumb by another person without the fault of appellee; that the person who bit the thumb "was in a state of intoxication to such an extent that he did not know that he was inflicting such injury and by reason thereof said injury so inflicted * * * upon said plaintiff was not in any manner intentional, but was wholly unintended and accidental." The application is by the terms of the policy made a part thereof.

It provides that the benefits of membership in the appellant society "shall not extend to nor cover disability or death resulting wholly or partly, directly or indirectly, voluntarily or involuntarily, accidentally or otherwise, from any of the following causes, to wit, \* \* \* intentional injuries inflicted by the insured or any other persons (burglars and robbers excepted)."

The cause being at issue, it was submitted to the court. Upon proper request, a special finding of facts was made, conclusions of law stated thereon, and judgment rendered in favor of appellee for $180. The errors assigned are the action of the court in overruling appellant's demurrer to the complaint; in overruling its motion for judgment on the special finding; in its conclusions of law on the special finding; in overruling appellant's motion for a new trial.

It is contended by appellant's counsel that the special finding of facts is in several particulars not sustained by sufficient evidence. It is not necessary to consider all the questions raised.

In denying the sufficiency of the complaint, counsel for appellant admit that had the complaint charged that the injury was inflicted unintentionally, without stating the facts on which the statement was based, the pleading would have been good, but insist that the facts set out do not show the want of intention. Granting, as counsel claim, that the inference pleaded, of a want of intention, adds no strength to the pleading, yet the general averment remains that the infliction of the injury was unintentional. The rule for which counsel contend, that "every drunken man intends to do the thing he does at the time he performs it" is not supported by the authorities. While drunkenness is no excuse for crime, the law recognizes both in civil and criminal proceedings that one may become so intoxicated as to be incapable of having an intention. *Aszman* v. *State,* 123 Ind. 347. (See authorities collected in foot-notes to this case in 8 L. R. A., p. 34.) *People* v. *Harris,* 29 Cal. 678;

*People* v. *Eastwood*, 14 N. Y. 562.    The complaint is sufficient.

In support of the second specification of error it is claimed that there is no finding that any verified and final proofs of injury or proofs of any kind were made by plaintiff or received by the defendant prior to the bringing of the suit, or at any time; that as one of the conditions on which the policy was issued was that any benefit for which the society may be liable shall not be payable "until after satisfactory, direct, verified, and final proofs upon blanks in use by the society have been received by the society in Duluth, Minnesota, it was a material fact to be proved and found. The court, however, does find that a "notice of said injury accompanied by the certificate of a physician, which said notice and certificate complied in all things with the requirements of said policy,   *   *   *." It is also found that no further notice, certificate, or proofs of said injury was requested or required from said plaintiff on the part of the defendant.

It is contended that there is no finding to show the material allegation that the policy was issued to the plaintiff in consideration of the membership fee.    There is a finding that appellant issued a policy which is set out, but there is no finding of the payment of any consideration therefor. There is evidence from which a finding of payment might have been made, but not a finding of payment.    Payment was an ultimate fact which should have been found.    *State ex rel.* v. *Griffin,* 16 Ind. App. 555, and authorities cited. But payment of the consideration seems from the record to have been treated as an admitted fact; and under *Towell* v. *Hollweg,* 81 Ind. 154, it was not essentially necessary for the court to make such a finding.

It is next contended that there is not a finding that the injury was unintentionally inflicted.    Finding five is as follows:    "That at the time the said O'Haver made the assault on the plaintiff, he, the said O'Haver was intoxicated

to such a degree that he did not know or realize the fact that he was assaulting or had assaulted the plaintiff, and did not know at the time he was doing so, that he was biting or had bitten the plaintiff's thumb in the manner hereinbefore stated." Knowledge is necessary to intention, and this finding is equivalent to a finding that the injury was committed unintentionally.

The court did not err in its conclusions of law on the findings. The action of the trial court in overruling the motion for a new trial remains to be considered. It presents the question whether the findings of the court are sustained by sufficient evidence. Upon this specification, the real controversy rests.

Was O'Haver, by whom the injury was done appellee, intoxicated to such an extent as to be incapable of forming an intention to assault appellee ? The solution of the question makes it necessary to examine the evidence. The evidence shows that appellee and one William P. O'Haver were brothers-in-law; that at the time of the injury, they, with other persons, were in a saloon together in the town of Farmersburg, kept by one Heck. Appellee, in his testimony, made the following statement: "Will was talking and saying something about his never mistreating a man in this business; he was pretty full then, and I just made some remark about the time he had Joe Riggs indicted and it had cost him $37.50; and he said I was   *   *   *   , that he did not do it; and I said, Will, if you will go down to Sullivan I can show you on the books that you did, and he swore, and repeated that any man who said that was a   *   *   *. He was pretty drunk and I just said to Jim Heck, I will go out; I don't want to have any trouble in your house or in any man's house; so I went out at the back door for the purpose of getting rid of him [O'Haver], and he just came out after me, and before I knew it he grabbed me by the whiskers and pulled me down onto him; I put my hand up to try to loose his hand from my whiskers and some way he got my

thumb in his mouth and bit it three or four times. In fact
he was chewing it." Plaintiff testified that he made no
effort to fight O'Haver; he thought he had been drinking.
He further testified that when he went out of the saloon he
did not know that O'Haver intended to follow and assault
him; that he himself was not intoxicated, and that he only
took hold of the hand of O'Haver to loosen his hold from
his (plaintiff's) whiskers, and to pull his thumb out of
O'Haver's mouth. In going down plaintiff fell on top of
O'Haver. William P. O'Haver testified that if on the
occasion referred to he bit plaintiff's thumb, he was "too
full" to know what he was doing, did not know that he was
doing it; that he did not intentionally inflict any injury
upon plaintiff. Upon cross-examination O'Haver testified
that he met plaintiff at 9 or 10 o'clock on the day of the
injury at Heck's saloon; that at the invitation of plaintiff he
and others took a drink. Fifteen or twenty minutes after
this drink plaintiff left Heck's; he returned (but in what
time the witness does not state) and the parties drank again
at the invitation of the witness, the witness drinking whis-
key. Soon after the witness had drunk the second time,
plaintiff said that the witness had procured one Joe Riggs
to be indicted. The witness said he had not indicted Riggs
and that plaintiff said it was either the witness or his wife,
and witness said that as he always took his wife's part he
probably used the offensive language toward the plaintiff to
which the plaintiff had testified. Witness further testified
that Heck asked them to go out; that he didn't want any
trouble in his house; that plaintiff started out the back door,
and that he followed him; that he was pretty drunk; that
when he got to the door it looked like there were three
Dudleys, and that the three of them would do him up, and
he took hold of them; that he did not remember anything
else. Heck testified that after the parties were separated
O'Haver washed his own face. Samuel Flowers:
"O'Haver washed himself and Heck washed Dudley.

O'Haver's lip was cut and his mouth bleeding. After they were separated each claimed that the other had hit him first. I think O'Haver was drinking. Did not think he was drunk."

The evidence shows that O'Haver up to the time of the trouble had not taken more than two drinks of whiskey. As shown by his own testimony, he was able to give circumstantially what occurred up to the time he took hold of plaintiff's whiskers. Immediately after they were separated he said: "I don't want it to get out how I got this blood on my face." Water was furnished him. One witness says that he washed his own face. Heck testified that he washed his face and told him to get out of the yard and stay away from there; and he hadn't been there since.

The uncontradicted evidence shows knowledge of the assault by O'Haver. His detailed statement of what he had done and said up to the time he actually had the thumb of appellee in his mouth makes this knowledge manifest. His statement that he was too drunk to know anything is vain as against his circumstantial narration of what was done and said. Apart from this statement there is nothing in the evidence to show that he did not intend to inflict the injury for which appellee seeks indemnity. The finding that he did not know that he was assaulting appellee or biting his thumb is not supported by sufficient evidence. It is not sufficient to overcome the presumption that men's acts are intentional.

Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial.