### 4601, 4602. GAYNOR *v.* TRAVELERS INSURANCE COMPANY; and *vice versa.*

1. In a suit upon an insurance policy the petition should contain, or have attached thereto, a copy of everything appearing "upon the face or in the body of the policy," including all stipulations embraced in that part of the policy which precedes the signatures of the company's officers by whom it was executed. *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (27 S. E. 975).

2. An answer is evasive which refuses either to admit or to deny a matter as to which the plaintiff is necessarily presumed to have knowledge. Where a defendant is alleged to be a corporation, an answer declining, for want of sufficient information, either to admit or to deny such an averment, would be evasive and should be treated as an admission of the averment. *Raleigh & Gaston Ry. Co.* v. *Pullman Co.,* 122 *Ga.* 700 (50 S. E. 1008); *Shamos* v. *So. Bell Telephone & Tel. Co.,* ante, 463 (77 S. E. 312). But an answer distinctly denying an allegation that the defendant is a corporation, although it may be false, is not evasive.

3. Where, at the conclusion of the plaintiff's evidence, a motion for nonsuit is overruled, and, after evidence for the defendant has been introduced, a verdict is directed in favor of the defendant, to which exception is duly taken, a determination of this exception settles the case, and an assignment of error in a cross-bill of exceptions, complaining of the refusal to grant a nonsuit, will not be considered.

4. Where one person injures another and the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him, it is, as to him, accidental, although it may be intentionally inflicted by the other party.

5. In an action upon a policy of accident insurance, the burden is upon the insurer to prove that the injury is within an exception provided for in a stipulation that no recovery shall be had for an injury intentionally inflicted upon the insured by any other person.

6. Where a person receives an injury, the presumption is that it was accidental rather than the result of design.

7. An injury intentionally inflicted upon another by a person intoxicated at the time is within an exception in a policy of accident insurance which provides that no recovery shall be had for an injury, "intentionally inflicted upon the insured by any other person, sane or insane."

8. The inference that one intends the natural consequence of his act is a rule of circumstantial evidence, applicable to all human transactions, an• is to be applied in criminal as well as in civil cases in passing upon the sufficiency and weight of the evidence.

9. Where one approaches another from the rear and, at a distance of eight or ten feet, deliberately aims and fires a deadly weapon at the person thus approached, and the latter dies from the wound thus inflicted, and nothing more appears, there is a conclusive inference that the person shooting intended to take the life of the person at whom he shot.

10. The mere fact that at the time the homicide took place other persons were in close proximity to the person killed and might have been in-

jured by the shot was not sufficient to rebut the inference that the slayer intended to kill the person shot.

DECIDED APRIL 16, 1913.

Action on insurance policy; from city court of Savannah—Judge Davis Freeman. December 6, 1912.

*Anderson, Cann & Cann,* for plaintiff.

*Osborne & Lawrence, E. H. Abrahams,* for defendant.

POTTLE, J. The action was upon an accident insurance policy insuring against loss resulting from bodily injuries effected, directly and independently of all other causes, through "external, violent, and accidental means." One of the exceptions in the policy was as follows: "This insurance shall not cover disappearance, suicide sane or insane, . . injuries, fatal or non-fatal, intentionally self-inflicted or intentionally inflicted upon the insured by any other person, sane or insane" (with certain exceptions not material to be here noted). The insured met his death under the following circumstances: He and three other men were walking slowly down Congress street, in the city of Savannah late in the afternoon, and one Davis was seen walking rapidly behind the four men. When Davis arrived within eight or ten feet of the men he stopped and called to one of them. The insured turned around and faced Davis, who immediately discharged a pistol twice. One of the shots struck the insured, and he afterwards died in consequence of the wound thus inflicted. Immediately after the shooting Davis walked away with the pistol in his hand. When arrested he asked the officer what he would do if a fellow came up and slapped him in the face. This was the only remark made by Davis in reference to the shooting. It was not shown that the insured had slapped Davis's face; nor did it appear that there had been any previous difficulty between them, nor is any motive for the killing disclosed by the evidence. It further appears that Davis was very drunk at the time the shooting took place. Davis was not introduced as a witness. The trial judge overruled a motion for a nonsuit, at the conclusion of the plaintiff's evidence, and directed a verdict in favor of the defendant after testimony substantially as set out above had been introduced by the defendant. The plaintiff sued out a bill of exceptions complaining of the direction of the verdict, and the defendant by cross-bill, complains of a refusal to grant a nonsuit.

The headnotes state our view of the practice questions involved, and need no elaboration. It is well settled that, where a motion for a nonsuit is overruled and the defendant introduces evidence and recovers a. verdict, if the evidence as a whole authorizes the verdict rendered, the judgment overruling the motion for a nonsuit will not be reversed, even though the plaintiff failed to make out a prima facie case. *Rice* v. *Ware,* 3 *Ga. App.* 573, 575 (60 S. E. 301) ; *Carr* v. *Georgia Loan & Trust Co.,* 108 *Ga.* 757 (33 S. E. 190) ; *Holder* v. *Scarborough,* 119 *Ga.* 256 (46 S. E. 93). There is no real dispute between counsel in reference to the legal principles which control this case. Policies of insurance are to be construed most strongly against the insurer. *Mass. Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918, 42 L. R. A. 261). An injury is presumed to be the result of accident rather than of design. In policies of accident insurance, which indemnify against loss effected through external, violent, and accidental means, it has uniformly been held that a recovery may be had ·for an injury inflicted by another, if the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him. *Travelers Insurance Co.* v. *Wyness,* 107 *Ga.* 584, 589 (34 S. E. 113), and citations. To meet these decisions, an exception was inserted in accident policies, to the effect that no recovery could be had for an injury intentionally inflicted by another. Under this exception, it was held that, if the injury upon the insured was inflicted by an insane person, it could not be said to have been intentional. *Corley* v. Travelers Protective Asso., 105 Fed. 854 (46 C. C. A. 278) ; Berger v. Pacific Mut. Life Ins. Co., 88 Fed. 241. Finally to meet this last line of decisions, an exception such as the one now involved was added to policies, to the effect that no recovery could be had for an injury intentionally inflicted by another person, whether he was sane or insane at the time. The burden is upon the company to prove that the injury is within this exception. *Travelers Ins. Co.* v. *Wyness,* supra.

The only question, therefore, material to be considered is, whether or not the company so far carried the burden in the present case as to demand a finding in its favor. We agree with counsel for the plaintiff, that in order to carry this burden, it is necessary for the defendant to prove a specific intent to kill on the part of the person inflicting the injury ; for he must have intended to inflict

the particular injury which resulted to the insured. In criminal law, before one can be convicted of assault with intent to murder, the State must prove the specific intent to kill. *Gaskin* v. *State,* 11 *Ga. App.* 11 (74 S. E. 554); *Patterson* v. *State,* 85 *Ga.* 131 (11 S. E. 620, 21 Am. St. Rep. 152). Where death does not result, it is rarely ever that the proof demands a finding that the person inflicting the injury intended to kill, even though he used a weapon likely to produce death, and in a manner calculated to have this effect; though there are cases where it has been held that the evidence demanded a finding that there was a specific intent to kill. Thus, in *Tyre* v. *State,* 112 *Ga.* 224 (37 S. E. 374), where the accused stated that he was going to kill the prosecutor, and thereupon immediately fired his pistol at him two or three times, and the balls struck in close proximity to the person at whom the shots were fired, it was held that a verdict for assault with intent to murder was demanded. In the *Kendrick* case, 113 *Ga.* 760 (39 S. E. 286), a similar ruling was made.

It is, of course, conceded by counsel for the plaintiff that, where death ensues and the homicide is committed without circumstances of justification or mitigation, malice and the specific intent to kill are presumed, and a finding for murder is demanded. It is insisted, however, that no such presumption will be indulged in civil cases, where the burden is on the defendant to prove an intentional killing. It seems to us that the fallacy of this contention lies in the assumption, that this so-called presumption is a rule only of the criminal law. It is but an inference of fact and a rule of circumstantial evidence applicable to all human transactions. In a trial for murder the State holds the affirmative, and must prove malice and the intent to kill, because there can be no crime without the joint operation of act and intention. The State may carry this burden, however, by proof of a state of facts from which an inference of malice and intention to kill may, or must, be drawn. When it is shown that death has resulted from the use of a deadly weapon, used in a manner likely to produce death, a case for the State has been made out, and the accused is put to his defense. And so, in a case like the one now under consideration, if it is shown that death has ensued from a wound inflicted by another with a deadly weapon used in a manner likely to produce death, the case for the defendant is made out, because proof of such a state of facts with-

out more, raises a conclusive inference that the person inflicting the injury intended the consequences which resulted, to wit, death. It is rarely ever possible to prove an intent by direct evidence. Intent is something which exists in the human mind and can be manifested only by external acts from which an inference of intent will arise. If one discharge a pistol, under circumstances which indicate that it was not accidental, there is a conclusive inference that he intended to fire it; and if he pointed at another and fired and hit him, there is a conclusive inference that he intended to hit him, in the absence of something to rebut such an inference. Now if death does not result, there is ordinarily no such inference that death was intended; but if death does result, an inference of an intent to kill arises, and becomes conclusive, unless it is met and overcome by other circumstances showing the absence of such intent. Where a particular injury is inflicted, there is a conclusive inference that such injury was the probable consequence of the act which inflicted it, and there is, also, a conclusive inference that the person inflicting the injury intended the natural consequence of the act.

The plaintiff insists, however, that there were circumstances surrounding the homicide which would have authorized the jury to find that the inference of an intent to kill had been rebutted. This insistence is based mainly upon the fact that no motive for killing the insured was shown, and that three other men were in close proximity to him at the time he was shot. The slayer approached within eight or ten feet of these four men. He fired twice, killing the insured, and then immediately stopped shooting and walked away. We are unable to see how a jury by any rational process could reach the conclusion that Davis intended to kill one of the other four rather than the man who lost his life. See *Fews* v. *State*, 1 *Ga. App.* 122 (58 S. E. 64). If he intended to kill one of the others, the evidence discloses no reason why he did not follow up the attack with the attempt to take the life of that person. The contention that he may have repented after killing one man hangs upon too slender a thread of logic to authorize a finding of this fact. While there is no proof that Davis and the insured had a previous difficulty, or that the insured had slapped his face, the remark made by Davis to the arresting officer is significant, as showing that he had a grievance against somebody,—an insane delusion, it may be, that somebody had offended him. Is it possible that there could properly be a finding

that this delusion was against a man who was not attacked, rather than against the man whose life Davis apparently took with calm deliberation and premeditation? Had Davis been sworn, and testified that in point of fact he did not intend to kill the insured, but fired at another member of the party, a different question might arise. The killing would be none the less murder, but upon an entirely different principle, and the question of intent might have been issuable.

The cases relied on by counsel for the plaintiff differ upon their facts from the present case. In Utter *v.* Travelers Ins. Co., 65 Mich. 546 (32 N. W. 812, 8 Am. St. Rep. 913), there was some evidence that the person killing did not know that it was the insured at whom he shot, and that he did not intend to kill the insured. In Guldenkirch *v.* U. S. Mut. Accident Asso. (City Ct. N. Y.), 5 N. Y. Supp. 428, it was issuable whether the insured came to his death as a result of accident, as this term is commonly understood, or as the result of an intentional injury inflicted by himself or another person. In Stevens *v.* Continental Casualty Co., 12 North Dak. (97 N. W. 862), the facts and circumstances proved were consistent with the theory that the killing was the result of an accidental or á non-intentional injury. In that case the insured met his death as a result of a pistol-shot wound; but it did not appear who fired the shot. The killing took place on a dark night. The shot was fired by some person standing in front of a locomotive engine, and struck and killed the insured, who was a brakeman performing his duties some distance away.

It is next insisted by counsel for the plaintiff that there was evidence authorizing a jury to find that Davis was so intoxicated as to be incapable of forming an intention to kill. It is contended that the exception in the policy does not cover such a mental condition. We are unable to agree with this contention. There could not be a recovery, whether the slayer was sane or insane. Every person is sane or insane. A sane man may become intoxicated, and likewise an insane man. It is certain that Davis was either sane or insane It is true that if insane, he could not have formed the intention to kill; but the evident meaning of the stipulation in the policy is that, if the injury be inflicted by an insane person under circumstances where it would have been intentional if he had been sane, there can be no recovery. There was, however, no proof that

Davis was insane, and the presumption is that he was sane. The contention of the plaintiff's counsel would make it necessary for the company to read into its exception an intentional injury inflicted by a person sane or insane or intoxicated. In our opinion, the words "sane or insane" cover the whole field of mental condition, and include that state of mind in which the will and reason has been temporarily dethroned by intoxication, resulting from the use of alcohol or any other substance which produces intoxication. In criminal law, insanity is a complete defense, because an insane man can not commit a crime. Drunkenness is no excuse for crime, if the man be sane. A man so drunk as to lack the quantum of mind necessary to form the intent to kill is, according to the *Jones* case, 29 *Ga.* 594, too drunk to commit murder; but "to be too drunk to form the intent to kill, he must be too drunk to form the intent to shoot." *Marshall* v. *State*, 59 *Ga.* 154. Even if there might be a recovery on the policy if there was such a state of drunkenness on the part of Davis as that referred to in the *Jones* case, it was not shown that he was in that condition. Certainly, under the evidence, he could and did form the intent to shoot; and if this be so, under the decision in the *Marshall* case, the inference necessarily arises that he had the intent to kill. The principle of the *Jones* case was applied in the case of the Northwestern Benevolent Society *v.* Dudley, 27 Ind. App. 327 (61 N. E. 207) ; but the policy in that case provided against intentional injuries inflicted by the insured or any other person, without adding the words, "sane or insane." The addition of these words, however, would probably make no difference, because, if the person inflicting the injury was sane, and yet in a state of mind where he was incapable of forming an intention to kill, it could not be said to have been the result of an intentional injury. We do not think, however, that the evidence would have authorized a finding that Davis was incapable of forming the intention to shoot and, therefore, the intention to kill. There was no error in directing a verdict.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed.*