419 So.2d 766 (1982)
William H. WILLIAMS, Myrtle Williams, Frances Williams, and William H. Williams, As Personal Representative of the Estate of Malcolm Ronald Williams, Deceased, Appellants,
v.
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Foreign Corporation, Gulf Life Insurance Company, a Florida Corporation, and Independent Life & Accident Insurance Company, a Florida Corporation, Appellees.
No. AE-495.
District Court of Appeal of Florida, First District.
September 23, 1982.
*767 William F. Daniel, Tallahassee, for appellants.
Miles Davis of Beggs & Lane, Pensacola, for appellees.
*768 ERVIN, Judge.
This is an appeal from a final judgment denying coverage under the double indemnity provisions of three life and accidental death policies. We affirm the lower court's determination holding that no coverage extended to the benefit of the insured as to the Independent Life and Accident Insurance Company on the ground that the policy had expired at the time of decedent's death. The policy clearly and unambiguously provided that the accidental death and dismemberment portion of the employee group life insurance policy would automatically cease upon the insured's termination from employment. The lower court apparently found, on conflicting evidence, that the insured was no longer an employee at the time of his death. This finding is supported by competent and substantial evidence.
We affirm also the lower court's holding as to the Gulf Life policy that the insured was not covered because his wounds were intentionally inflicted by another person. The policy has an express exclusion barring accidental death benefits under such circumstances. Again, there was substantial evidence supporting the lower court's finding.
The court's ruling denying the plaintiffs' requested relief as to their action on the New England Mutual Life Insurance Company policy on the ground that the insured's death occurred as the result of illness or disease  not accident  requires more extended discussion. New England Life's coverage excludes accidental death caused directly or indirectly due to a disease, or the insured's commission of a felony. As to the former, we reverse the lower court's determination that alcoholism is a disease, but as to the latter, we remand for factual considerations.
Malcolm Ronald Williams, the decedent, had been an alcoholic for many years, succumbing on occasion to hallucinations. At noon on the day of his death, he was driven to his apartment by his brother. He was then sober. The evidence suggests that between noon and late evening he began drinking heavily. Late that night his landlord and landlady were awakened by Williams' screams, to the effect that someone was trying to break into his apartment. One of the officers who was alerted to the scene remembers that Williams appeared to be intoxicated at the time. Williams' landlady recalls that his behavior was erratic; he was seen wildly flinging his arms. Nonetheless, he was finally calmed down, and the police departed.
Shortly thereafter, the decedent's landlady heard six shots. Her husband summoned the police the second time. Upon their arrival, they cautiously approached Williams' apartment. The landlady later recounted that she heard his door slam shut, making a loud noise; an officer, however, thought that he heard a gunshot. The decedent ran out into the yard swinging his arms about, gun in hand, shouting: "I got them! I got them!" Williams was ordered to halt, but he persisted on his fateful course. Two shots were fired, abruptly terminating Williams' unhappy life.
The appellants sought to recover from New England Life under the life and accidental death coverages of the policy. New England Life refused to pay the proceeds, arguing that its policy excluded as a risk, accidental death caused by disease or the insured's commission of a felony.[1] The case went to non-jury trial, and the insurer contended that Section 396.022(1), Florida Statutes (1971),[2] classifies alcoholism as a "disease" *769 within its policy terms. Alternatively, New England Life suggested that the decedent's death was caused by his commission of the felony of aggravated assault.
In support of these contentions, a police officer testified that if Williams had lived, he would have been charged with aggravated assault. Countering this, the state's attorney testified that Williams had been determined not to have committed any crime at the time of his death. As to his mental state, evidence was presented showing that the decedent was intoxicated and possibly hallucinating at the time of his death. Williams' brother stated that he found numerous empty beer cans in the decedent's apartment the day following his death. An autopsy, moreover, reflected that he had a .27 blood-alcohol rating.
The decedent's ex-wife, a nurse, stated that Williams in her opinion was definitely an alcoholic. She recounted that he often drank a minimum of a fifth of liquor per day and on occasion hallucinated due to his heavy and prolonged use of alcohol. She related one instance in which Williams had observed non-existent kittens in a closet. From a medical standpoint, as a nurse, she stated that alcoholism is not a disease. A pathologist who testified opined that Williams had been hallucinating. The pathologist posited that alcoholics who are hallucinating appreciate the significance of acts, but are unable to appreciate what they are doing. Further, he viewed alcoholism primarily as a disease. A psychiatrist partly concurred, explaining that one who suffers from alcoholic hallucinosis is temporarily insane. Yet, he did not view alcoholism as a disease, but rather a personality disorder.
Based upon this evidence, the court, without addressing the question of whether coverage should be denied due to the exclusion in the policy relating to persons whose deaths occur during the commission of felonies, found that the decedent's estate was not entitled to the proceeds of the New England Life policies, because the "disease" of alcoholism contributed to Williams' death. The lower court specifically noted that Section 396.022, Florida Statutes (1971), states that, as a matter of public policy, alcoholism is a disease. We reverse as to that finding.
The New England Life policy provision bars company liability for death resulting, directly or indirectly, from a disease or infirmity. Section 396.022(1) states that, as a matter of public policy, alcoholism is to be regarded as a disease. Normally, a statute applicable to the insurance policy, which was in force at the time the policy of insurance was consummated, is considered a basic ingredient of the contract, because the law in existence at the time of the making of the contract of insurance forms a part of that contract, as if it were expressly referred to in its terms. National Merchandise Co., Inc. v. United Service Automobile Association, 400 So.2d 526, 531 (Fla. 1st DCA 1981). Our inquiry is directed to the question of whether Section 396.022(1) is material for the purpose of applying the policy exclusion, thereby making it a part of the contract of insurance.
Whether alcoholism is a disease for insurance purposes is a question that cannot be readily answered, although a superficial reading of Section 396.022(1) would seem to indicate that it is. Nevertheless, we note with interest the position taken by the United States Supreme Court in a criminal proceeding:
[T]he inescapable fact is that there is no agreement among members of the medical profession about what it means to say that "alcoholism" is a "disease." One of the principal works in this field states that the major difficulty in articulating a "disease concept of alcoholism" is that "alcoholism has too many definitions and disease has practically none." This same author concludes that "a disease is what the medical profession recognizes as such." In other words, there is widespread agreement today that "alcoholism" *770 is a "disease," for the simple reason that the medical profession has concluded that it should attempt to treat those who have drinking problems. There the agreement stops. Debate rages within the medical profession as to whether "alcoholism" is a separate "disease" in any meaningful biochemical, physiological or psychological sense, or whether it represents one peculiar manifestation in some individuals of underlying psychiatric disorders.
Powell v. Texas, 392 U.S. 514, 522, 88 S.Ct. 2145, 2149, 20 L.Ed.2d 1254 (1968), reh. denied, 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185 (1968) (footnotes omitted; emphasis in original). The opinion persuasively points out that it is really unclear whether alcoholism is a disease. This perception is buttressed by the disparate views attested to at trial below by the decedent's former wife, who is a nurse, the pathologist, and the psychiatrist. Powell emphasizes that the classification of alcoholism as a disease is often for the express purpose of treatment, rather than punishment.
A careful scrutiny and consideration of Section 396.022, Florida Statutes, reveals that the legislature intended for alcoholics to be treated  not punished by incarceration in the county jail, or placement in the town pillory, as had been the traditional means of public response to the condition of alcoholism. This purpose of the "Comprehensive Alcoholism Prevention, Control, and Treatment Act," Chapter 396, Florida Statutes, is manifested throughout Section 396.022. The statute includes a finding that existing laws have not successfully dealt with alcoholism prevention and treatment. See § 396.022(3), Fla. Stat. (1971). It further declares that "[t]he criminal law is not an appropriate device for preventing or controlling health problems. Dealing with public inebriates as criminals has proved expensive, unproductive, burdensome, and futile." § 396.022(4), Fla. Stat. (1971). The statute calls for handling alcoholics as sick persons. § 396.022(8), Fla. Stat. (1971).
We consider that Chapter 396 was enacted for resolving public health problems  not for insurance purposes. We find support for this view in the title of the enactment effectuating Chapter 396, entitled: "AN ACT relating to public health... ." See Ch. 71-132, Laws of Fla. Although the title of an act is of course not a part of the enactment itself, it is an extremely helpful guide to statutory interpretation and legislative intent. Speights v. State, 414 So.2d 574, 578 (Fla. 1st DCA 1982); Cook v. Blazer Financial Services, 332 So.2d 677, 679 (Fla. 1st DCA 1976). Thus, while Section 396.022(1) may classify alcoholism as a disease, we find, as a matter of law, this classification is for health rather than for insurance purposes.[3]
It is readily apparent that the term "disease," as used in New England Life's standard policy, is highly ambiguous, especially when considered against the facts of this case. If the question were susceptible to a resolution solely upon the conflicting medical testimony, we acknowledge that we would be obliged to sustain the lower court's finding as there was competent, substantial evidence supporting that determination. Yet, the question is not so simply resolved. We are confronted also with the *771 question of whether the insurer, by the language it employed, intended to include alcoholism within the gamut of excluded risks under the policy. We consider that if New England Life had wished to condition its contractual liability upon the insured's conformance with certain conduct, or the exclusion of certain risks, it could have done so in clear, unambiguous language. National Merchandise, at 530. Application of the ambiguous terminology to "the facts of the case creates a necessity for an interpretation or choice between two or more possible meanings. When an ambiguity such as this exists in an insurance policy, any uncertainty must be construed against the insurer and in favor of the insured." U.S. Fidelity & Guaranty Co. v. Helms, 413 So.2d 767, 768 (Fla. 3d DCA 1982); accord, Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). Alcoholism is simply not a risk expressly excluded from the New England Life policy, and we reverse as to the lower court's conclusion to the contrary.
As to New England Life's alternative argument that the proceeds need not be paid, because the decedent's death was caused by his commission of an aggravated assault, we have observed that the lower court expressly deferred from ruling on this issue. Since we have determined appellants' right to the proceeds by reversing the finding that alcoholism is a disease, we find it necessary to confront New England Life's alternative argument. Remand of this case will be necessary in order for the court to make a factual finding relating to whether the insured's death was caused by his commission of an aggravated assault.
As a general rule, one need not be convicted of a felony for one's estate or beneficiaries to be denied the proceeds of an insurance policy by virtue of a policy clause in which the insurer excludes the risk of death resulting from the insured's commission of a felony. See Barker v. California-Western States Life Insurance Co., 252 Cal. App.2d 768, 61 Cal. Rptr. 595, 600 (1967), cert. denied, 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968).[4] In the case at bar there is evidence suggesting that the decedent was involved in the felony of aggravated assault at the time of his death due to the police officer's testimony that the decedent would have been so charged, if he had lived. Of course this testimony conflicted with the state's attorney's statement that the decedent was determined by him not to have been committing a felony at the time of his death and would not have been prosecuted by him for such offense had he lived.
In resolving this question, the lower court will need to consider whether the decedent was intoxicated at the time of his death. There is substantial evidence before the court for it to find that the decedent was intoxicated, perhaps even hallucinating, at the time of his death. Aggravated assault is considered a specific intent crime, State v. Shorette, 404 So.2d 816, 817 (Fla. 2d DCA 1981), and voluntary intoxication is a defense to a specific intent crime. Russell v. State, 373 So.2d 97, 98 (Fla. 2d DCA 1979). Consequently, one who is so *772 heavily intoxicated as to be incapable of forming the requisite intent may avoid the application of a clause barring coverage for death or injury occurring due to commission of a crime. 1B Appleman, Insurance Law & Practice § 452 (1981); Northwestern Benevolent Society v. Dudley, 27 Ind. App. 327, 61 N.E. 207 (1901). Finally, the policy excludes the risk of death only if there is a causal connection between the death and the insured's commission of the alleged felony.
Accordingly, we affirm the lower court's order denying the right of the insured's estate to the proceeds of the Independent Life and Gulf Life policies. We reverse the final judgment insofar as it bars the appellants' right to the proceeds from the New England Life policies due to Section 396.022, Florida Statutes. This case is remanded so that the lower court may determine whether the decedent was involved in the commission of a felony at the time of his death, and if so, whether his death was caused, directly or indirectly, by this act.
AFFIRMED in part, REVERSED in part, and REMANDED for further consistent proceedings.
McCORD and SHAW, JJ., concur.
NOTES
[1] In the paragraph marked "RISKS NOT ASSUMED," the policy states, "The Company shall in no event incur any liability under this Agreement, if death, even from accidental injury, shall result directly or indirectly, wholly or partly, from any of the following causes: ... the Insured's committing or attempting to commit a felony; ... any disease or infirmity; ... ."
[2] Section 396.022, Florida Statutes (1971), states in relevant part:

(1) Alcohol abuse and alcoholism are increasing throughout the country and in Florida. Alcohol abuse can seriously impair health and lead to chronic and habitual alcoholism. Alcoholism is recognized as an illness or disease that requires attention and treatment through health and rehabilitative services.
[3] Contrast Kitchen v. Time Ins. Co., 232 N.W.2d 863, 865 (Iowa 1975) (undefined term "sickness" in insurance policy includes alcoholism; court's opinion based on a review of numerous cases not involving insurance policy clauses); Poole v. Life & Casualty Ins. Co. of Tenn., 47 Ala.App. 453, 256 So.2d 193 (1971) (trial court correctly rejected jury instruction that alcoholism is a disease, since this is a factual question); Knowlton v. John Hancock Life Mutual Ins. Co., 146 Me. 220, 79 A.2d 581 (Me. 1951); and Annot., 61 A.L.R.3d 822 § 20 (1975). Only one case of substance has applied § 396.022. In United States v. Poolaw, 588 F.2d 103, 105 n. 2 (5th Cir.1979), cert. denied, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979), the defendant had requested a criminal jury instruction that, if he was found to be an alcoholic and therefore suffering from a mental disease based on the statute, he should be acquitted, assuming his actions were the product of the disease. Following a prior decision of the court pre-dating the statute, the court rejected this argument because there was no evidence to suggest that alcoholism was a mental disease. The case impliedly rejects the application of the statute to a setting other than that of public health.
[4] A number of cases have confronted the issue of the right to recover proceeds when the insured's policy excluded the risk of death caused in part by the insured's violation of the law. See, e.g., McCall v. National Life & Accident Ins. Co., 95 Ill. App.3d 737, 51 Ill.Dec. 271, 420 N.E.2d 685 (1981) (insured killed by bullet when he attempted to assist his brother who was being attacked found not to be engaged in commission of a felony); McDaniel v. Country Life Ins. Co., 93 Ill. App.3d 834, 49 Ill.Dec. 260, 417 N.E.2d 1087 (1981) (beneficiaries presented no facts from which it could be inferred that insured's injury of car passenger during flight from police was anything but criminally reckless, and right to policy proceeds was correctly denied, since insured's death occurred while "committing an assault or felony."); Thomas v. First Nat'l. Life Ins. Co., 250 So.2d 42 (La. 1971) (violation of a traffic offense resulting in death or injury does not bar recovery of proceeds when policy excludes risk occurring due to "violation of the law"); Standard Life Ins. Co. Of the South v. Hinton, 247 Miss. 838, 157 So.2d 486 (1963) (violation of a misdemeanor traffic offense falls within policy exclusion of death due to "violation of the law"); Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857 (1949) (policy excluding risk of death due to "violation of the law" includes case of insured husband being killed by his wife after making a criminal threat to her); contrast Martin v. Mass. Mut. Life Ins. Co., 225 Tenn. 56, 463 S.W.2d 681 (1971).