500 So.2d 831 (1986)
Donald A. HAYDEN
v.
The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.
No. 85 CA 1344.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
*832 Russell L. Dornier, Baton Rouge, for plaintiff-first appellant Donald Hayden.
*833 Neil H. Mixon, Baton Rouge, for defendant-second appellant Guardian Life Ins. Co. of America.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Donald A. Hayden (plaintiff) and his dependents were insured under a group policy written by The Guardian Life Insurance Company of America (defendant). In 1982, plaintiff's daughter underwent treatment for what was diagnosed as alcoholism and drug abuse. Except for a small fraction of the total charges, defendant refused payment. Plaintiff then brought suit. The trial court ruled that plaintiff's claim should have been paid and awarded him $9,569.21, but it denied plaintiff's claim for penalties and attorney fees. Plaintiff has appealed the denial, and defendant has appealed the finding that the claim was payable under the contract of insurance.
Plaintiff's minor daughter was treated for drug and alcohol abuse at the Talbot Outpatient Center in February and March of 1982, under the supervision of Dr. Augusto Abad. From September to November of 1982, MacTavish Williamson, an independent chemical abuse counselor, treated her for the same problem. In November and December of 1982, she continued to receive treatment for this malady as a patient at the Hazelden Pioneer House in Minnesota. Plaintiff submitted claims for this treatment totalling $9,569.21. Defendant tendered a check (evidently uncashed) for $881.51 for payment of a portion of the Hazelden charges under the "mental or emotional illness" clause of the policy, but it refused to make any other payments for these charges, believing that they were not covered by the policy.
This case raises four issues: (1) What state's law should govern? (2) Under the applicable law, is treatment for alcoholism and drug abuse covered as a "sickness" under the insurance policy? (3) Were these charges incurred "upon the order of a physician" as required by the policy? (4) Should penalties and fees be assessed against defendant?

ISSUE ONE
Defendant asks that the law of Rhode Island be applied. Its position is essentially as follows: Because Louisiana law then excluded small companies such as plaintiff's from group coverage, the policy in question was initially delivered to a Rhode Island trust, under whose auspices the employees of plaintiff's corporation received coverage. LSA-R.S. 22:215 (before amended in 1980). The policy states that it was delivered in Rhode Island and is to be governed by Rhode Island law. No Louisiana statute in effect when these claims arose compelled the application of Louisiana law.
The pertinent law of Rhode Island was not brought to the attention of this or the trial court. Defendant never established that the law of that state differed from our law or that application of Rhode Island law would alter the outcome of this case.[1] Absent a showing of what another state's law is, it will be presumed to be the same as Louisiana's. Lord v. Metropolitan Life Insurance Co., 434 So.2d 1179 (La.App. 1st Cir.1983); Johnson v. Nationwide Life Insurance Co., 388 So.2d 464 (La.App.2d Cir.1980) and cases cited therein. Because defendant failed to establish the content of the relevant law of Rhode Island, we will apply Louisiana law.

ISSUE TWO
The insurance agreement provides coverage for "sickness or injury":

*834 Covered Charges means those charges which are reasonable charges necessary for the treatment of a sickness or injury, actually made to a Covered Person and incurred while he is insured hereunder, on account of such sickness or injury....
It defines "sickness" as "a sickness or disease, suffered by a Covered Person, all complications thereof or therefrom and all related conditions and recurrences thereof." Coverage for mental and emotional illness is significantly limited:
The Insurance Company will not pay Major Medical Expense Benefits under this Policy for charges for medical care and treatment enumerated below, except to the extent therein provided and subject to all other Major Medical Expense provisions in this Policy.
....
(9) Charges for the care or treatment of mental or emotional illness, disorder or disturbance, except such charges incurred (a) during the first sixty days of a single period of confinement of a covered person in a hospital specifically for the treatment of such mental or emotional illness, disorder or disturbance, which confinement lasts at least seven consecutive days; and (b) within one month after the termination of such a single period of hospital confinement.
For the purpose of this provision, all periods of hospital confinement for the care or treatment of mental or emotional illness, disorder or disturbance shall be deemed a single period of confinement unless the periods of hospital confinement are each separated by twelve consecutive months or longer during which the confined Covered Person shall have resumed and continuously carried on the normal full-time activities of a healthy individual of like age and sex. The benefits afforded under (a) or (b) above shall be available but once as to each such single period of hospital confinement.
Defendant's position is that the treatment at Talbot and Hazelden and by Williamson was for an emotional or mental illness; thus, the coverage was limited to the amount defendant tendered. The basis of defendant's argument is that alcohol and drug abuse is properly classified as an emotional or mental illness, not as a sickness or disease. If such chemical abuse is a mental disorder, the charges clearly fall under the mental illness clause of the policy.
Dr. Louis Cataldie and Dr. Augusto Abad, both medical doctors recognized as experts specializing in alcohol and drug abuse, testified that this problem is a sickness or disease. According to Dr. Cataldie, when the patient's primary diagnosis indicates alcoholism, he has a physical disease. Dr. Abad testified that his primary diagnosis of plaintiff's daughter was alcoholism and drug abuse and that for years these maladies have been classified as physical rather than mental problems. Defendant notes that Dr. Abad mentions conduct disorders in his diagnosis; defendant suggests that because of this mention, a primary conduct or mental disorder led to the substance abuse. Dr. Abad made it clear that the conduct disorder was secondary and pointed out that alcohol and drug abuse is often misdiagnosed as a conduct disorder. In their depositions, Dr. Dennis Hogenson, a clinical psychologist at Hazelden, and Jim Heaslip, a chemical dependency counselor at Hazelden, advanced the view that plaintiff's daughter had the disease of chemical dependency, not a mental disorder.
Defendant's only witness, Elizabeth Bennett, a supervisor in defendant's claims division, testified that defendant's policy is to consider substance abuse as a mental or nervous disorder. It was her belief that these problems are so classified in the International Classification of Diseases, Ninth Revision, and the Diagnostic and Statistical Manual of Mental Disorders II.
This precise issue is apparently res nova in Louisiana. In Jennings v. Louisiana and Southern Life Insurance Co., 290 So.2d 811, 813-814 (La.1974), the Supreme Court cited the following definition of *835 "sickness" and guidelines for interpretation of insurance policies.
Webster's Third New International Dictionary (Unabridged) (1971), G. & C. Merriam Company defines:
....
"SICKNESS: ... the condition of being ill: ill health: ILLNESS ... a disordered, weakened, or unsound condition ... a form of disease ..."
....
Words used in an insurance contract are to be understood in the usual and common signification. C.C.1946; Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 170 So.2d 646 (1965); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Ambiguous coverage provisions in a policy are construed most favorably to the insured and against the insurer. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1954); Mutual Life Ins. Co. of New York v. New, 125 La. 41, 51 So. 61 (1910). And, "... if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee." C.C. 1958.
The weight of the evidence presented in this case supports the view that chemical dependency of the type suffered by plaintiff's daughter is a sickness or disease. To the extent that "sickness" as used in the insurance agreement may be deemed vague or ambiguous, the guidelines cited above indicate that the term should be interpreted as encompassing chemical dependency.
A federal court has noted that chronic alcoholism "is now almost universally accepted medically as a disease. The symptoms... may appear as `disorders of behavior.' " Driver v. Hinnant, 356 F.2d 761, 764 (4th Cir.1966)[2] (Footnote omitted.) In Kitchen v. Time Insurance Co., 232 N.W.2d 863 (Iowa 1975), the court construed the word "sickness" in an insurance contract to include alcoholism.[3] A Wisconsin court, considering whether a "drinking problem" was a handicap for purposes of a discriminatory discharge claim, described "alcoholism" as a disease, proved by expert medical opinion. Connecticut General Life Insurance Co. v. Department of Industry, Labor & Human Relations, 86 Wis.2d 393, 273 N.W.2d 206, 212-213 (1979). In State v. Street, 498 S.W.2d 523, 524 (Mo.1973), the court noted that, unlike the state of intoxication, "[a]lcoholism is a chronic disease" and that the distinction between the two is known generally.
Based on the evidence presented and the cited jurisprudence, we conclude that the plaintiff's daughter's condition was chemical dependency, that her chemical dependency was a sickness covered under the policy, and that a finding that this sickness is not governed by the "mental illness" clause of the policy is not clearly wrong.[4]

ISSUE THREE
Plaintiff seeks recovery for treatment at Talbot, with Williamson, and at Hazelden. We will discuss each treatment separately when considering the question of whether the treatment was undertaken upon the orders of a physician.

*836 TALBOT
Dr. Augusto Abad saw plaintiff's daughter when she began treatment at Talbot. His diagnosis was alcoholism and drug abuse. He testified that the Talbot treatment was occasioned by that diagnosis. He answered affirmatively when asked, "Now, Dr. Abad, all the treatment at Talbot is carried under your duration as a physician, is it not?" MacTavish Williamson, one of the Talbot counselors, testified by deposition that the work at Talbot was done under Dr. Abad's direction. That Dr. Abad is a physician is not disputed. Therefore, we find that the Talbot charges were incurred upon the order of a physician.

WILLIAMSON
Several months after completing the program at Talbot, plaintiff's daughter again began to have problems with substance abuse. She and her parents sought help from MacTavish Williamson. At the time he began this treatment, Williamson was no longer a staff member at Talbot, having formed his own counseling service, MacTavish and Associates. He relied on the diagnosis made by Dr. Abad at Talbot, and he discussed the case with Dr. Henry Ehrlich, a psychiatrist with whom Williamson worked.[5] Under the circumstances, we believe that Williamson's treatment fits the policy requirement: "incurred upon the order of a physician." It is fairly obvious that plaintiff's daughter was continuing the treatment begun by Dr. Abad with the same counselor she saw at Dr. Abad's direction.

HAZELDEN
We consider the Hazelden treatment to be covered by the policy for the following reasons:
(A) The treatment at Hazelden was initiated by Williamson. He decided that an "intervention" had become necessary and chose Hazelden as the appropriate facility. Thus plaintiff's daughter's referral to Hazelden was simply a continuation of the treatment begun by Dr. Abad for her sickness which he had diagnosed.[6]See Baque v. Pan-American Life Insurance Co., 313 So.2d 293, 297 (La.App. 3rd Cir.), writ denied, 318 So.2d 52 (La.1975) (defining "treatment" as all the steps taken to effect a cure of the injury or disease).
(B) Hazelden takes a "team" approach to its services. When a patient arrives, he is evaluated by a team to determine what his particular needs are and what treatment best suits those needs. According to Jim Heaslip, this team includes a medical doctor, Dr. Philip J. Worrell. The administrator of Hazelden is Damian McElrack, described by Heaslip as a doctor. A psychiatrist is available should he be required. Thus, when the "team" diagnosed plaintiff's daughter as dependent on chemicals and recommended treatment, that "team" included a medical doctor.
The Hazelden records indicate the participation of a physician in the diagnosis and treatment. The admission form states that Dr. Worrell was the attending physician. The withdrawal form shows that while at Hazelden plaintiff's daughter received a chest x-ray, a tuberculosis test, a physical exam, and medication for a cough and an eye inflammation. Dr. Worrell's name was signed to this form by S. Sloan. The bill shows five different charges for prescription drugs, presumably ordered by a physician.
(C) The claim form for Hazelden charges indicates that C.D. Townes, M.D., was the attending physician for plaintiff's daughter's treatment for chemical dependency administered at Hazelden.
ISSUE FOUR
Plaintiff claims that defendant arbitrarily, capriciously, and unreasonably denied payment. Whether an insurer had just grounds for refusing to pay is a question *837 of fact, and the trial court's finding on this matter should not be disturbed unless it is clearly wrong. Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735, 739 (La.App. 1st Cir.1985), writs denied, 486 So.2d 735, 736 (La.1986). Given the conflict among authorities over the question of whether alcohol and drug abuse is correctly termed a "sickness" or a "mental or emotional disorder," we conclude that the trial judge was not clearly wrong in refusing to award penalties and fees.
For the foregoing reasons, we affirm the judgment of the trial court and tax costs to defendant.
AFFIRMED.
NOTES
[1] We have discovered no cases in which a Rhode Island court has addressed the question of whether alcohol and drug abuse is a mental illness or a physical disease. However, that state's statutes treat mental illness and alcoholism separately. R.I.Gen.Laws, § 40.1-4-1, et seq. and 40.1-5-1, et seq. A federal court called on to examine the constitutionality of Rhode Island's law on alcoholism commented that "[a]lcoholism, though itself a damnable evil, is not a manifestation of evil. Rather, it is a dread disease...." Donahue v. Rhode Island Department of Mental Health, Retardation and Hospitals, 632 F.Supp. 1456, 1480 (D.R.I.1986).
[2] That court also noted that the "World Health Organization recognizes alcoholism `as a chronic illness that manifests itself as a disorder of behavior (accent added).'"Driver, 356 F.2d at 764 (footnote omitted).
[3] Contra, Williams v. New England Mutual Life Insurance Company, 419 So.2d 766, 770 (Fla. Dist.Ct.App.1982).
[4] In reaching this last conclusion we are cognizant of the rule of construction which dictates that "exclusionary clauses must be interpreted strictly in the insured's favor." Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La. 1984). See also Gregorie v. Hartford Accident and Indemnity Co., 348 So.2d 186, 191 (La.App. 3rd Cir.), writs denied, 350 So.2d 1210, 1213 (La.1977), holding that exclusionary clauses in insurance policies are to be "even more stringently interpreted" against the insurer than ambiguity occurring elsewhere.
[5] Evidently, plaintiff's daughter never saw Dr. Ehrlich personally.
[6] We note again that the policy's definition of "sickness" encompasses "all complications thereof or therefrom and all related conditions and recurrences thereof."